*NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ROBERT W. PURSELL, and SANDRA M. COIA, | Civil Action No. 13-1571 (FLW) |
| Plaintiffs, | |
| v. | OPINION |
| DIANNE SPENCE-BROWN, *et al.*, | |
| Defendants. | |

## WOLFSON, District Judge:

*Pro se* plaintiffs, Robert W. Pursell ("Pursell") and Sandra M. Coia ("Coia") (collectively "Plaintiffs"), initiated the instant suit against multiple defendants,[1] alleging that they violated various state and federal labor and employment laws, including the Labor Management Relations Act and the Employee Retirement Income Security Act ("ERISA"), involving a Collective Bargaining Agreement ("CBA"). In the instant matter, both Defendants International Brotherhood of Teamsters ("IBT") and Communications Workers of America Savings and Retirement Trust ("Trust") (collectively, "Defendants") move separately to dismiss the Complaint. On its motion, IBT contends that it does not owe Plaintiffs any contractual or other union related duties because it is not the union with which Plaintiffs contracted. In the same vein, the Trust argues that it is also not a

---

[1] Plaintiffs named the following defendants: Communications Workers of America ("CWA"); the Communications Workers of America Local 1033 ("Local 1033"); Dianne Spence-Brown, Executive Vice President and member of the board of Local 1033; Dennis Reiter, Treasurer and member of the board of Local 1033; Anthony Miskowski, Secretary and member of the board of Local 1033; the International Brotherhood of Teamsters, Teamsters Local 115 ("Teamsters 115"); and the Communications Workers of America Savings and Retirement Trust.

proper defendant because it owes no duties to Plaintiff as a fiduciary. For the following reasons, Defendants' motions to dismiss are **GRANTED**.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

Plaintiff Pursell was a member of the Communications Workers of America ("CWA") for thirty-three years.[2] Pl.'s Compl., ¶ 6. On April 1, 2009, Pursell began his employment with Local 1033, a local subchapter of CWA, as a Staff Representative. *Id.* At the time of the Complaint, he had been terminated from Local 1033. *Id.* Plaintiff Coia previously worked for the New Jersey Department of Education for eighteen years. *Id.* at ¶ 7. In August 2004, Coia was hired by Local 1033 as an Education Planner, but she also performed the duties of a Staff Representative. *Id.* Currently, Coia is on medical leave from Local 1033. *Id.*

During their employment, Plaintiffs entered into a CBA with Teamsters 115, which represented employees of Local 1033. *Id. at ¶* 16. IBT, an international labor union located in Washington, D.C., is the "parent" organization of Teamsters 115. *Id.* at ¶ 13. The Trust is an employee pension benefit plan under the CBA. *Id.* at ¶ 15. Both Plaintiffs were participants in the Trust. *Id.* at ¶¶ 6-7.

The issues underlying this suit arose from certain employment disputes between Plaintiffs and both Local 1033 and Teamsters 115. Plaintiffs allege in their Complaint that "[t]his is a hybrid Section 301 suit under the LMRA charging the Union, Teamsters Local 115 with a breach of the duty of fair representation and a breach of contract and violation of the terms of the Collective Bargaining Agreement by Employer, CWA Local

---

[2] CWA is a labor organization, and it is a parent organization of CWA Local 1033. Pl.'s Compl. ¶ 14. CWA and CWA Local 1033 are named defendants in the litigation; however, these defendants did not move to dismiss.

1033." *Id.* at ¶ 1. In a relevant provision of the CBA at issue, "Teamsters Local 115 is the sole and exclusive representative of all full and part-time non-managerial, non-officer employees of CWA Local 1033." *Id.* at ¶ 17. Plaintiffs concede that they are both full-time non-managerial, non-officer employees, represented by Teamsters 115. *Id.* at ¶ 18.

Plaintiffs aver numerous grievances – which are not pertinent to the instant motion -- directed against Local 1033 and Teamsters 115. *See e.g.,* ¶¶ 16-115. However, the Complaint alleges very little, if any, wrongdoing by IBT and the Trust. Regarding the actions of IBT, Plaintiffs allege, in a conclusory manner, that IBT breached its duty of fair representation and contractual obligations. *See Id.* at ¶¶ 6-7. Plaintiffs alleges that "Pursell sent a certified, return receipt request, letter to James P. Hoffa, General President of the International Brotherhood of Teamsters" that requested IBT's intervention for certain alleged wrongdoings committed by Local 1033 and Teamster 115. *Id.* at ¶ 73. Plaintiffs further allege that they "have attempted to obtain internal remedies with both defendants Teamsters Local 115 and [IBT] to no avail." *Id.* at ¶ 114. And, "Defendant [IBT] and Teamsters Local 115's misleading conduct rose to the level of fraudulent concealment." *Id.*

As to the actions of the Trust, Plaintiffs aver that the Trust has violated its responsibility under ERISA and the CBA by failing to operate the 401(k) Plan prudently and for the exclusive benefit of the participants. *Id.* at ¶¶ 133-34. Specifically, Plaintiffs allege that the Trust "continually made delinquent deposits of elective deferral deposits and employer contributions, failed to segregate and place contributions in trust for the sole benefit of plan participants." *Id.* at ¶ 134. Further, Plaintiffs allege that they "were discriminated and retaliated against by [the Trust]… for exercising rights which they

3

were entitled under the provisions of their employee benefit plan." *Id.* at ¶ 135. In addition to the ERISA claims, Plaintiffs assert a claim for tortious interference with a contractual right against the Trust. *Id.* at ¶ 137. In that claim, Plaintiffs allege in a broad brush fashion that because of the above actions related to Plaintiffs' 401(k), all "[d]efendants interfered with the attainment of rights to which plaintiffs were entitled under the plan." *Id.* at ¶ 135.

Based on these allegations, Plaintiffs filed their Complaint against Defendants on May 14, 2013, including IBT and the Trust. In the instant motions, IBT and the Trust separately move to dismiss the Complaint. Although these motions were filed separately, this Court addresses both motions in tandem in this Opinion.

## DISCUSSION

### I. Standard of Review

Under Rule 12(b)(6), "courts are required to accept all well-pleaded allegations in the complaint as true and to draw all reasonable inferences in favor of the non-moving party." *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 230 (3d Cir. 2008) (citing *In re Rockefeller Ctr. Props. Secs. Litig.,* 311 F.3d 198, 215–16 (3d Cir. 2002)). However, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). The pleading must contain more than "labels and conclusions or a formulaic recitation of the elements of a cause of action…." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555) (internal citations and quotations omitted). Thus, a complaint will survive a motion to dismiss if it contains "sufficient factual matter, as accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly,* 550 U.S.

at 570) (internal citations and quotations omitted). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

**II.      IBT**

IBT contends that it has no contractual relationship with Plaintiffs and, although is the "parent" organization for Teamsters 115, it is a separate legal entity. In that regard, IBT maintains that it does not have any contractual obligations to Plaintiffs, nor does it owe Plaintiffs a duty of fair representation. On the other hand, Plaintiffs argue that IBT is not a separate entity, but rather Teamsters 115 is a subordinate organization to IBT. Because of that alleged relationship, Plaintiffs contend that IBT has assumed a duty to fairly represent Plaintiffs. The Court disagrees.

First, "a suit properly brought under § 301 must be a suit either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violations of a contract between such labor organizations." *Crusco v. Local 804 Intern. Alliance of Theatrical Stage Employees*, 2012 WL 4506298, at *3 (D.N.J. Sept. 28, 2012) (citing *Wooddell v. Int'l Bhd. Of Elec. Workers, Local 71*, 502 U.S. 93, 98 (1991)). Here, Plaintiffs concede that "[d]efendants CWA Local 1033 and Teamsters Local 115, in Union Recognition Article II of the CBA, have agreed that Teamsters Local 115 is the sole and exclusive representative of all full and part-time non-managerial, non-officer employees of CWA Local 1033." Pl.'s Compl. ¶ 17. Both Pursell and Coia are full time non-managerial, non-officer employees of Local 1033. *Id.* at ¶ 18. Plainly, Local 1033 and Teamsters 115, and not IBT, were signatories

to the CBA. Therefore, since IBT is not a signatory to the CBA, it has no contractual obligations to Plaintiffs.

The next inquiry is whether IBT has assumed a duty of fair representation. To prove breach of duty of fair representation, a plaintiff "must show 'arbitrary or bad-faith conduct on the part of the Union' and offer 'substantial evidence of fraud, deceitful action or dishonest conduct. *Moore v. Essex Cnty. Div. of Welfare*, 2009 WL 2581511, at *8 (D.N.J. Aug. 20, 2009) (quoting *Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Employees v. Lockridge,* 403 U.S. 274, 300 (1971)). "When determining the vicarious liability of an international union for the discriminatory action of its local union affiliates and their officers, common law agency principles apply." *Scott v. Graphic Commc'ns Int'l Union, Local 97-B*, 92 Fed. Appx. 896, 905 (3d Cir. 2004) (citing *Carbon Fuel Co. v. United Mine Workers*, 444 U.S. 212, 217 (1979)). The "mere [parent-subordinate] affiliation is insufficient to infer a principal agent relationship." *Id.* at 906. Instead, "[t]he test to determine whether an agency relationship exists is essentially one of balancing the character of the business affairs subject to the International's control and supervision against those left to the discretion of the local." *Id.* (quoting *Alexander v. Local 496, Laborers Int'l Union of North Am.,* 778 F. Supp. 1401, 1420 (N.D. Ohio 1991)); *see Shepherdson v. Local Union No. 401 of Int'l Ass'n of Bridge Structural & Ornamental Ironworkers*, 823 F. Supp. 1245, 1256 (E.D. Pa. 1993) ("Proper analysis focuses more on the reality of the control, not necessarily the number and structure of the International's 'regulations' that govern maintenance of a local charter").

"Mere constructive knowledge of possible illegal activity on the local level is not sufficient to impose a legal duty to intervene on the International Union." *Brenner v.*

*Local 514, United Bhd. Of Carpenters & Joiners of Am.*, 927 F.2d 1283, 1289 (3d Cir. 1991); *see Scott*, 92 Fed. Appx. 896, 905-906 (3d Cir. 2004) (international union "did not authorize and ratify allegedly improper conduct by failing to intervene" despite knowledge of alleged discrimination and harassment). In *Brenner*, the court reasoned that "[i]mposing upon an international union the legal obligation to protect local union members from allegedly abusive tactics by local officers could alter the delicate balance between local unions and their internationals, to the sacrifice of local union independence." *Brenner*, 927 F.2d at 1289.

Here, the Complaint alleges a myriad of wrongful conduct against Teamsters 115, the local union which represented Plaintiffs. However, there are no allegations that IBT instigated, supported, ratified or encouraged the particular activities alleged or that IBT had any control over Teamsters 115's actions. Rather, Plaintiffs simply complain that IBT did nothing to aid them when they sought IBT's support in a letter dated January 4, 2013. *See* Pl's Compl., ¶ 73. And, because of the inaction by IBT, Plaintiffs allege that IBT's conduct amounts to fraudulent concealment.[3] *Id.* at ¶ 114. Those allegations are not sufficient to hold IBT liable for the alleged actions of Teamsters 115. The fact that Plaintiffs sent, and assuming IBT received and reviewed, the letter dated January 4, 2013, is not sufficient to establish that IBT "authorize[d] and ratif[ied] allegedly improper conduct by failing to intervene" despite having knowledge of the matters. *See Scott*, 92 F. App'x 896, 905-906 (3d Cir. 2004). Moreover, Plaintiffs do not make any specific allegations that IBT had influence or control over the decisions of Teamsters 115.

---

[3] While Plaintiffs have not expressly done so, to the extent that Plaintiffs assert a fraudulent concealment claim against IBT, that claim has not been properly pled. Indeed, fraudulent concealment was merely mentioned in an allegation supporting Plaintiffs' theory that IBT should be liable for the alleged wrongdoings of Teamster 115.

7

Instead, the pleadings contain nothing more than "labels and conclusions." *Ashcroft,* 556 U.S. at 678. Thus, Plaintiffs have not adequately pled facts establishing that IBT is an agent of Teamsters 115, and therefore, claims against IBT are dismissed.

**III.     The Trust**

The Trust argues that it is not a proper defendant, and the complaint is devoid of any factual allegations against the Trust that, if true, would support a finding that the Trust breached a fiduciary duty owed to Plaintiffs or that it tortiously interfered with Plaintiffs' contractual rights. The merits of the claims aside, the first inquiry is whether the Trust is a proper defendant in this action.

"A fiduciary includes any person who 'exercises any discretionary authority or discretionary control respecting management of such plan' and any person who 'has any discretionary authority or discretionary responsibility in the administration of such plan.'" *Adams v. Freedom Forge Corp.,* 204 F.3d 475, 492 n. 17 (3d Cir. 2000) (citing 29 U.S.C. § 1002(21)(A)). "Fiduciary status is not an all or nothing concept. A court must ask whether a person is a fiduciary with respect to the particular activity in question." *Mulder v. PCS Health Sys., Inc.*, 431 F. Supp. 2d 450, 454 (D.N.J. 2006) (quoting *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995)). An ERISA fiduciary must exercise "the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in alike capacity and familiar with such matters would use." 29 U.S.C. § 1104(a)(1)(B).

Contrary to the Trust's assertion that it is not qualified as a "person" under ERISA, in the definitional section of ERISA, "the term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, ***trust***,

8

estate, unincorporated organization, association, or employee organization." 29 USCS § 1002(9) (emphasis added). Accordingly, the Trust may be a defendant; this does not foreclose Plaintiffs from amending the Complaint to also name the trustees.

Nevertheless, Plaintiffs have failed to state a claim against the Trust. In the entirety of the Complaint, the only allegation against the Trust is Plaintiff's assertion that the Trust, Teamsters 115 and Local 1033 "have violated their responsibility under ERISA and the CBA by failing to operate the 401(k) Plan prudently and for the exclusive benefit of participants." Compl.,¶ 134. In that connection, Plaintiffs allege that those defendants "continually made delinquent deposits of elective deferral deposits and employer contributions, failed to segregate and place contributions in trust for the sole benefit of the plan participants." *Id.* While Plaintiffs allege that Defendants, including the Trust, collectively violated ERISA in this manner, Plaintiffs make clear in other parts of the Complaint that those alleged wrongdoings are attributed solely to Local 1033. *See Id.* at ¶¶ 7, 36 ("CWA Local 1033 is in violation of the non-exempt prohibited transactions, failure to deposit voluntary contributions to the 401(k) in a timely manner, disparity in the participation of the 401(k), and delinquent deposit of employer and employee contributions to the respective employee's account."). Indeed, aside from allegations of wrongful conduct on the part of Local 1033, Plaintiffs have not identified any specific fiduciary duty that the Trust has breached. In fact, no allegations have been made as to what action by the Trust constituted a breach of fiduciary duty owed to Plaintiffs, and furthermore, there are no allegations made as to how any action by the Trust itself, as opposed to the actions of Plaintiffs' employer, i.e., Local 1033, constituted a breach of the Trust's fiduciary duty. As such, Plaintiffs have failed to state a claim in this context.

9

In addition, Plaintiffs assert that the Trust tortiously interfered with Plaintiffs' contractual rights. Plaintiff has not stated a proper tortious interference claim. Indeed, under New Jersey law, to properly plead a claim for tortious interference with contractual relations, the complaint must contain facts alleging: (1) the existence of a protected interest; (2) interference with malice (3) a reasonable likelihood that the interference caused the loss of a prospective economic gain; and (4) the injury caused the damages. *Mu Sigma, Inc. v. Affine, Inc.*, 2013 WL 3772724, at *4 (D.N.J. July 17, 2013) (citing *Printing Mart-Morristown v. Sharp Elec. Corp.*, 563 A.2d 31 (1989)).

Plaintiffs allege that the Trust, and all other named defendants, tortiously interfered with Plaintiffs' contractual rights because they deprived Plaintiffs the benefit, *inter alia*, of their 401(k). Pl.'s Compl. ¶ 137. That is the only allegation against the Trust relating to the claim for tortious interference. Clearly, Plaintiffs have failed to even recite the elements of a cause of action for tortious interference, let alone provide sufficient factual allegations to support their claim. Indeed, Plaintiffs' lone conclusory statement is insufficient to support their tortious interference claim. *See Ashcroft,* 556 U.S. at 678.

## CONCLUSION

For the reasons set forth above, IBT's motion to dismiss is **GRANTED**, and claims against IBT are dismissed without prejudice. Similarly, the Trust's motion is **GRANTED,** and claims against the Trust are dismissed without prejudice.

DATE: November 1, 2013  /s/     Freda L. Wolfson
Freda L. Wolfson
United States District Judge