***NOT FOR PUBLICATION***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ROBERT W. PURSELL, Plaintiff, | : | Civil Action No.: 13-1571(FLW) |
| v. | : | **OPINION** |
| DIANE SPENCE-BROWN, *et al.*, Defendants. | : | |

**WOLFSON, United States District Judge:**

This matter arises out of labor-related disputes between *pro se* Plaintiff Robert W. Pursell ("Plaintiff" or "Pursell"),[1] his union employer, Communications Worker of America Local 1033 ("Local 1033"), and his union, Teamsters Union Local Union No. 115 ("Local 115"). Having been directed by the Court to amend his complaint on two separate occasions, Plaintiff, in his Second Amended Complaint, assert nine causes of action against Local 1033, Dianne Spence-Brown, Dennis Reiter, Anthony Miskowski (the "Local Defendants"), Communications Workers of America, AFL-CIO ("CWA National") and Local 115 (collectively, "Defendants"). Presently, the Local Defendants and CWA National move separately to dismiss Plaintiff's Second Amended Complaint. Additionally, Local 115 moves for judgment on the pleadings.

For the reasons set forth on below, CWA National's motion to dismiss is **GRANTED** in its entirety and Local 115's motion for judgment on the pleadings is **GRANTED** in its entirety. As to the Local Defendants' motion to dismiss, the Court dismisses Counts Three and Four,

---

[1] This lawsuit was initiated by plaintiffs Robert Pursell and Sandra M. Coia. However, by Order dated January 31, 2014, the parties stipulated to the dismissal of Coia as a plaintiff.

without prejudice, but the remaining Counts are dismissed with prejudice. Consistent with this Opinion, Plaintiff shall have leave to amend his Complaint as to Counts Three and Four against the Local Defendants only. Additionally, Plaintiff is directed to delete any allegations currently included in the Second Amended Complaint related to former plaintiff Coia.

**PROCEDURAL HISTORY**

Plaintiff, together with former *pro se* plaintiff Sandra Coia, initiated this action on March 14, 2013. In November 2013, the Court, upon motion practice, dismissed, without prejudice, defendants International Brotherhood of Teamsters ("IBT") and Communications Workers of America Savings and Retirement Trust (the "Trust"), and provided Plaintiff leave to file an amended complaint. The Court, by Order dated January 31, 2014, dismissed Coia as a plaintiff upon her request. On August 5, 2014, Plaintiff filed an Amended Complaint, removing Coia as a plaintiff, but asserted additional claims against IBT and the Trust. However, in my Opinion dated March 30, 2015, the claims against IBT and the Trust were, again, dismissed. A motion to dismiss by Teamster Local 115 was granted in part and denied in part. Plaintiff was directed to file a second amended complaint consistent with the March 2015 Opinion.

The Second Amended Complaint (the "Complaint") asserts nine separate causes of action against Defendants, alleging violations of the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA"); the Labor Management Relations Act of 1947 ("LMRA"); the Employee Retirement Income Security Act ("ERISA"); the CWA Constitution and Local By-Laws; the Collective Bargaining Agreement (the "CBA") between Local 115 and Local 1033; certain state common law claims; and Article 1, ¶¶ 1, 6 and 19 of the New Jersey Constitution.

In the present matter, both the Local 1033 Defendants and CWA National move separately to dismiss the Complaint; and Local 115 moves for judgment on the pleadings.

**BACKGROUND**

I note at the outset that because Plaintiff represents himself in this litigation, his Complaint is not a model of clarity. Indeed, Plaintiff repeats numerous allegations throughout, and he includes pleadings that are not relevant to this case. Moreover, a majority of Plaintiff's allegations are vague and conclusory. Particularly glaring is Plaintiff's inclusion of averments relating to alleged wrongful conduct by Defendants against formerly named plaintiff Coia. In fact, Plaintiff peppers his Complaint with detail facts regarding already-dismissed claims raised by Coia in a previous iteration of the Complaint. Those facts will not be considered here, because Coia has been dismissed as a plaintiff upon the consent of the parties.[2] Therefore, only allegations pertaining to Plaintiff Pursell will be considered by this Court on these dispositive motions, and in that regard, the Court will take them as true for the purposes of this Opinion.[3]

Plaintiff was formerly employed as the Director of CWA New Jersey. *See* Compl., ¶ 6. In 2009, Plaintiff retired from his employment at CWA New Jersey and obtained a position at Local 1033; Local 1033 President Rae Roeder was Plaintiff's then-supervisor. *Id.* During his employment, Plaintiff was a member of Local 1033, as well as its employee. Based on Plaintiff's averments, it appears that Local 1033 is a union which represents public sector employees. *See* Compl., ¶ 162.

---

[2] Plaintiff, in his Opposition, argues that former plaintiff Coia's claims should be reinstated because her agreement to dismiss them was the result of fraud and misrepresentation. However, Plaintiff simply does not have standing to raise any arguments on behalf of Coia. Should Coia wishes to revive her claims based on a valid reason, she must move before the Court on her own accord.

[3] I note that Defendants ask that this Court to strike large portions of Plaintiff's Complaint containing any mention of Coia. I find it appropriate to strike those allegations.

Plaintiff alleges that during the course of his employment, Local 1033 unilaterally changed Plaintiff's salary and hours of work, which were "adverse to Pursell's interest." *Id.* at ¶¶ 6, 20. According to Plaintiff, those changes to the terms of his employment were retaliatory acts against him. For example, Plaintiff avers that in July and August of 2012, he began researching salary disparities at the request of defendant Spence-Brown, one of Plaintiff's supervisors. It became apparent to Plaintiff after the research that there was "inherent unfairness in the salaries paid to staff and officers of defendant CWA Local 1033." *Id.* at ¶ 22. Plaintiff states that this issue was reported to Local 1033. Subsequently, Plaintiff alleges that his work hours were reduced allegedly due to returning to work late from lunch on two occasions. *Id.* at ¶ 23. Another example occurred in late August 2012; Plaintiff alleges that he protested Local 1033's new practice of permitting employees to leave work at 5:45 p.m., while officially putting on their time sheets that they left at 6:00 p.m. *Id.* at ¶ 24. Plaintiff alleges that in response, Local 1033 accused him of working with a dissident union member, Jesse Averhart, in an attempt to "get [Local 1033] placed in trusteeship by the National Union." *Id.* at ¶ 26.

In September 2012, Plaintiff alleges that he joined Local 115 as the union representing his employment interests at Local 1033.[4] *Id.* at ¶ 28. And, in October 2012, Plaintiff requested Local 115 to file a grievance on Plaintiff's behalf regarding various issues relating to the operation of Local 1033. *Id.* at ¶ 32. However, Plaintiff alleges that Local 115 failed to file any grievance on his behalf. On October 18, 2012, Local 1033 terminated his employment. Immediately, Plaintiff sought the representation of Local 115, but according to Plaintiff, Local 115 repeatedly declined to represent Plaintiff and instead, advised Plaintiff that he should pursue Local 1033's internal

---

4 As it will be discussed *infra*, the status of Plaintiff's membership in Local 115 is a disputed fact in this case.

appeal procedures regarding the termination. *Id.* at ¶ 39. In his Complaint, Plaintiff alleges that on numerous occasions he contacted Local 115 in an attempt to request representation, but to no avail. *Id.* at ¶¶ 45, 70, 112.

In November 2012, after having failed to obtain representation from Local 115, Plaintiff sent a memo to Local 1033 accusing leadership of wrongfully terminating Plaintiff in an attempt to retaliate against Plaintiff for exercising certain unspecified protected activity, as well as exercising his unspecified rights under the LMRDA. *Id.* at ¶ 44. During that same month, Plaintiff filed internal charges with CWA National, against his supervisors, including defendants Spence-Brown, Reiter and Miskowski, for breaching their fiduciary responsibilities as officers of Local 1033. *Id.* at ¶ 46. The charges further include accusations concerning misappropriation of money and property of Local 1033 by these officers, failure to comply with the CWA constitution, bylaws and the rules and practices. The charges also "cite . . . the termination of plaintiff Pursell" as contrary to governing CWA rules. *Id.* at ¶ 46.

On November 13, 2012, in addition to those charges, Plaintiff officially filed an internal appeal of his termination to the Local 1033 Executive Board. *Id.* at ¶ 47. And, around the same time, Plaintiff filed unfair labor practices claims against Local 1033 with the National Labor Relations Board ("NLRB"). *Id.* at ¶ 49. In December 2012, Local 1033 sent Plaintiff a letter scheduling a hearing by the Executive Board to hear Plaintiff's appeal. In so doing, Local 1033 also raised the question whether Plaintiff should remain a member of Local 1033, since Plaintiff no longer was employed there. *Id.* at ¶ 52. Plaintiff responded to the letter and accused Local 1033 of "attempting to revoke plaintiff's membership in defendant CWA Local 1033 as a convenient way of making the charges and appeals filed by plaintiff Pursell to go away." *Id.* at ¶ 54. Plaintiff also sent the same response to CWA National. *Id.* at ¶ 56.

In January 2013, Plaintiff received a letter from CWA National informing Plaintiff that the national union declines to address the requests by him, including the threat of revoking his membership by Local 1033. *Id.* at ¶ 76. In that same month, Plaintiff also received a decision from the Executive Board of Local 1033 denying Plaintiff's appeal regarding his termination, *id.* at ¶ 82, as well as a decision from the NLRB that his labor related claims were dismissed. *Id.* at ¶ 85. About a month later, Plaintiff appealed both the Executive Board's decision to Local 1033 District One Vice President in New York City, and the NLRB's decision to the Acting General Counsel of the NLRB. *Id.* at ¶¶ 86, 93, 98.

In March 2013, Plaintiff filed additional internal charges against Local 1033's leadership, including defendants Spence-Brown, Reiter and Miskowski for attempting to revoke Plaintiff's membership in CWA in order to eliminate Plaintiff's rights, *inter alia*, to present further internal appeals. *Id.* at ¶ 108. That same month, Plaintiff initiated this action. Since the filing of the Original Complaint, Plaintiff alleges that his membership in Local 1033 has been permanently revoked, *id.* at ¶¶ 120-121, 137; that the appeal of the denial of his termination has been affirmed by the District One Vice President of CWA, *id.* at ¶ 125; and that CWA National also further rejected charges filed by Plaintiff, *id.* at ¶ 126. More importantly, Plaintiff claims that because his membership in Local 1033 was wrongfully revoked, CWA National "would no longer process appeals from [him] and [had] reiterate[d] . . . he may not file any appeals." *Id.* at ¶ 153.

## DISCUSSION

### I. Standard of Review

#### A. Motion to Dismiss

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether,

under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (citation and internal quotations omitted). The factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As the Third Circuit summarized:

> 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element.

*Phillips*, 515 F.3d at 234 (quoting *Twombly*, 550 U.S. at 555); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to set out in detail the facts upon which he bases his claim. The pleading standard is not akin to a probability requirement; to survive a motion to dismiss, a complaint merely has to state a plausible claim for relief." (citation and internal quotations omitted)).

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, a claim for relief must be plausible. *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

Moreover, the Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Pa. Allegheny Health Sys., Inc.*, 627 F.3d at 98. That said, the

Rule 8 pleading standard is applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 556 U.S. at 684) (internal quotations omitted).

**B. Motion for Judgment on the Pleadings**

Rule 12(c) of the Federal Rules of Civil Procedure allows a party to move for judgment on the pleadings "after the pleadings are closed but within such time as not to delay trial." Fed. R. Civ. P. 12(c). The applicable standard on a motion for judgment on the pleadings is similar to that applied on a motion to dismiss pursuant to Rule 12(b)(6). *Spruill v. Gillis*, 372 F.3d 218, 223 n. 2 (3d Cir. 2004). When reviewing a motion made pursuant to Rule 12(c), a court must take all allegations in the relevant pleading as true, viewed in the light most favorable to the non-moving party. *Gomez v. Toledo*, 446 U.S. 635, 636 n.3 (1980); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 253 (3d Cir. 2004). All reasonable inferences must be made in the non-moving party's favor. *See In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010). "The motion should not be granted 'unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law.'" *Mele*, 359 F.3d at 253 (quoting *Leamer v. Fauver*, 288 F.3d 532, 535 (3d Cir. 2002)). Accordingly, in order to survive a motion for judgment on the pleadings, the non-moving party's pleading must provide "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. This standard, like a motion to dismiss, requires the non-moving party to show "more than a sheer possibility that a defendant has acted unlawfully," but does not create as high of a standard as to be a "probability requirement." *Ashcroft*, 556 U.S. at 678.

Because before me there are three separate motions, I will address each individually, below.

## II. CWA National – Motion to Dismiss

At the outset, I remark that while the instant Complaint asserts nine separate causes of action, it is entirely vague from a reading of the Complaint which defendant is alleged to have violated what laws, and how. Furthermore, Plaintiff mentions and invokes various statutes — such as the Americans with Disabilities Act, the New Jersey Workers Compensation Act, the New Jersey State Wage and Hour law, and the New Jersey Conscientious Employee Protection Act — without alleging violations of them. Thus, Defendants lack clear notice of what laws they are accused of violating, in contravention of Fed. R. Civ. P. 8(a)(2) (requiring that a short and plain statement of the claim must give fair notice of what the claim is and the grounds upon with it rests). That said, because Plaintiff is proceeding *pro se*, the Court will attempt to construe each of Plaintiff's causes of action as it relates to the particular defendant, or a group of defendants, moving for dismissal, and assess whether it states a claim.

### A. Count One – 29 U.S.C. § 411

In Count One, it appears Plaintiff asserts a retaliation claim against Local 1033 and CWA National pursuant to Section 101(a)(2) of the LMRDA, 29 U.S.C. § 411(a)(2). Specifically, Plaintiff alleges that the decision to terminate his employment by Local 1033 was based largely on Plaintiff's expression of views, arguments and/or opinions permitted under the LMRDA. Thus, Plaintiff argues, Local 1033 and CWA National retaliated against him for expressing certain labor related views contrary to the LMRDA. In other words, as against CWA National, Plaintiff essentially alleges that CWA National wrongfully denied his internal appeals challenging Local

1033's revocation of Plaintiff's union membership, which decision has chilled his "dissident" voice in violation of the LMRDA, 29 U.S.C. § 411.[5]

Congress enacted the LMRDA to provide individual members of the unions an avenue to challenge union abuses. *See Knight v. Int'l Longshoremen's Ass'n*, 457 F.3d 331, 333 (3d Cir. 2006). In that regard, the statute contains a "Bill of Rights of Members of Labor Organizations," 29 U.S.C. § 411, whose guarantees include freedom of speech and assembly, the equal rights of all members to vote in union elections, and freedom from improper disciplinary action. *Id.* These provisions were enacted at least in part, "to protect rank-and-file members of the union and to insure union democracy by protecting the independence of elected union officials . . . ." *Ross v. Hotel Employees & Rest. Employees Int'l Union*, 266 F.3d 236, 252 (3d Cir. 2001). More particularly, the relevant provisions of the Union Members' Bill of Rights provide as follows:

> (a)(2) Freedom of speech and assembly
>
> Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: Provided, that nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.
>
> (a)(5) Safeguards against improper disciplinary action
>
> No member of any labor organization may be fined, suspended, expelled, or otherwise disciplined except for nonpayment of dues by such organization or by any officer thereof unless such member has been (A) served with written specific

---

5 I note that Plaintiff has submitted a lengthy Opposition to Defendants' dispositive motions. While Plaintiff spends 64 pages submitting additional facts not appearing in the Complaint and disputes — factually — the events that he alleged transpired, Plaintiff does not cite to any case law to support his arguments. In fact, Plaintiff makes no relevant legal arguments in his Opposition.

> charges; (B) given a reasonable time to prepare his defense; (C) afforded a full and fair hearing.

29 U.S.C. § 411(a)(2), (5). Section 411 confers a private right of action to redress violations of these sections of the LMRDA. *See Knight*, 457 F.3d at 336.

Here, the Court construes Plaintiff as having alleged that he was improperly disciplined when CWA National declared and upheld his non-member status, allegedly in retaliation for free speech and associational activities. However, Plaintiff's Complaint simply does not allege sufficiently that CWA National took any retaliatory acts against Plaintiff to suppress his rights under the LMRDA, other than Plaintiff's conclusory assertions. Indeed, Plaintiff does not allege that CWA National considered anything improper when it adjudicated and upheld Plaintiff's non-member status. Instead, Plaintiff alleges in detail how he utilized the CWA National's internal processes to pursue his rights, and that CWA National reviewed his appeals by conducting an investigation into the charges he asserted against Local 1033. *See, e.g.*, Compl., ¶¶ 76, 79, 131, 132. In that regard, Plaintiff further states he submitted certain documents and evidence to CWA National in support of his appeals, and that CWA National ultimately considered his appeals and decided to uphold Local 1033's decision to revoke Plaintiff's union membership. Nothing Plaintiff alleges in his 36-page Complaint attributed any wrongdoing on the part of CWA National, and CWA National's denial of Plaintiff's appeal does not amount to a violation of the LMRDA. Tellingly, according to Plaintiff, the only wrong that CWA National had committed was its failure to "prevent their subordinate body [Local 1033] from violating the rights of plaintiff Pursell and thus, defendant CWA [National] is also guilty of violating plaintiff's rights under the LMRDA Bill of Rights . . . ." Compl., ¶ 165. Such a conclusory allegation cannot suffice to state a claim under § 411. Therefore, Count One against CWA National is dismissed.

**B. Count Two – Breach of CWA Constitution and Local Bylaws**

In Count Two, Plaintiff alleges that in upholding the revocation of his membership status, CWA National acted *ultra vires*, or beyond its authority, in violation of the CWA Constitution and Local 1033 Bylaws. Section 301(a) of the LMRA permits a union member to sue a labor organization for violating its constitution or bylaws. *Wooddell v. Int'l Bhd. of Elec. Workers, Local 71*, 502 U.S. 93, 94 (1991). With respect to membership, Article V of the CWA Constitution provides that "Members of the Union who are on leaves of absence from their employment or who are employed on a full-time or part time basis by the Union or a Local or who are or may be retired for any reason may continue to be active members . . . ." CWA Constitution, Article V. It further states that "Membership in the Union shall be obtained and maintained through membership in a chartered Local of the Union." *Id.*

Indeed, to be a member of a chartered CWA Local 1033, one must conform to the local bylaws, such as Local 1033's Bylaws in this case. In that regard, the CWA Constitution states that "[a]ny person eligible for membership in the Communications Workers of America as defined in Article V of its Constitution shall be eligible for membership in this Local, if performing work within the Local's assigned jurisdiction, or if employed on a part-time or full-time basis by the Union or the Local." CWA Constitution, Article V, § 1(a).

Here, Plaintiff was terminated from his position in October 2012. The decision to terminate was made by Local 1033, not CWA National. Thus, CWA National was entirely within the scope of the CWA Constitution to uphold Local 1033's decision to revoke Plaintiff's membership since Plaintiff no longer worked for Local 1033. Put differently, because membership in CWA is contingent upon membership in a local union, the revocation of Plaintiff's employment foreclosed

his claim to both. Thus, CWA National's decision did not act *ultra vires* or violate its own Constitution or Bylaws.[6]

**C. Count Three – Breach of Employment Contract**

Plaintiff alleges that CWA National breached his "contractual right . . . to remain employed" at Local 1033. Compl. ¶ 70. It appears that in Count Three, Plaintiff asserts a state common law of breach of an employment contract. However, in order for a plaintiff to state such a claim, he must first plead the existence of a contract. *See Shebar v. Sanyo Business Sys. Corp.*, 11 N.J. 276 (1988). Here, as to CWA National, Plaintiff does not allege that it was employed by CWA National or that he had an employment contract with CWA National. There is no dispute that CWA National and Local 1033 are separate entities each with independent authority to contract on its own behalf. Plaintiff alleges that he was employed by Local 1033, and indeed, Local 1033 made the decision to terminate Plaintiff's employment. Hence, there are neither allegations to substantiate the existence of an employment contract with CWA National, nor does Plaintiff allege that CWA National ever intended to enter into a contract with Plaintiff. Accordingly, without the existence of a contract, Count Three against CWA National is dismissed.

**D. Count Four – Wrongful Discharge**

In Count Four, it appears Plaintiff is bringing a wrongful discharge claim against CWA National and Local 1033. In that connection, Plaintiff alleges that CWA National is liable for injuries resulting from Plaintiff's wrongful termination. *See* Compl., ¶¶ 172-176. This claim is easily disposed of. Because Plaintiff does not allege that CWA National was his employer,

---

[6] While CWA National in its Motion papers argued that it did not violate the CWA National when processing Plaintiff's complaints and appeals, I do not find Plaintiff alleges such a violation in Count Two of his Complaint. Rather, as against CWA National, Plaintiff only refers to the termination of his membership as a basis for violating the CWA Constitution and Bylaws. *See* Compl., ¶ 168.

Plaintiff cannot assert a wrongful discharge claim against CWA National. *See Tartaglia v. UBS PaineWebber, Inc.*, 197 N.J. 81, 108 (2008). Moreover, in order to state a cause of action for common law wrongful discharge in New Jersey, a plaintiff must allege the existence of an employment contract or the violation of clearly established public policy by the employer. *Bernard v. IMI Sys., Inc.*, 131 N.J. 91 (1993). Here, Plaintiff has failed to allege either element of the claim as it relates to CWA National, and thus, Count Four is dismissed.[7]

**E. Count Seventh – Tortious Interference with Contractual Rights[8]**

Plaintiff alleges in a conclusory fashion that each of the defendants has "tortiously interfered with the contractual rights described above." Compl., ¶ 185. However, in order to properly plead a claim for tortious interference with existing contractual rights, a plaintiff must allege the existence of a contract, actual interference with that contract, that the interference was inflicted intentionally and maliciously by a defendant who is not a party to the contract, that the interference was without justification, and finally, that the interference caused damage. *See Fleming v. United Parcel Service, Inc.*, 255 N.J. Super. 108, 137 (Law Div. 1992); *Raymond v. Cregar*, 38 N.J. 472, 479-80 (1962). Here, there are simply no facts to sufficiently allege the elements of a tortious interference claim against any defendant, including CWA National. Accordingly, this claim against CWA National is dismissed.

---

[7] To the extent Plaintiff asserts a wrongful discharge claim against CWA National pursuant to the LMRDA, the same reasoning applies; that is, because CWA National did not employ Plaintiff, it cannot not be alleged to have wrongfully terminated Plaintiff.

[8] Counts Five, Six and Eight are asserted against the Local Defendants and/or Local 115. They will be discussed *infra*.

### F. Count Nine – Violations of the New Jersey Constitution

Without any facts, Plaintiff alleges in a broad-brush fashion that CWA National and other defendants violated his free speech, free association, due process rights and collective bargaining under the New Jersey State Constitution. *See* N.J. Const. Art. 1 § 1 (due process); § 6 (liberty of speech); § 19 (collective bargaining). I need not discuss each of these claims in detail, as Plaintiff simply has not alleged any facts in support of these constitutional claims. Rather, Plaintiff merely lists these sections under the New Jersey Constitution and avers that he is entitled to relief. *See* Compl., ¶ 190. This is simply not sufficient under *Twombly*, and therefore, cannot survive Rule 12(b)(6) scrutiny. Count Nine is dismissed as against CWA National.

## III. The Local Defendants – Motion to Dismiss

### A. Count One – 29 U.S.C. § 411

Plaintiff alleges that his "termination" by Local 1033 and the "attempt and intent to revoke [his] membership," was based on its disagreement and suppression of "plaintiff['s] expression of views, arguments and/or opinions," and therefore violated Sections 101(a)(2) and 102 of the LMRDA, 29 U.S.C.A. § 41(a)(2) and § 412. Compl., ¶ 165. Plaintiff further alleges that these events are "part of a pattern of suppression of dissent within defendant CWA Local 1033" in violation of § 609 of the LMRDA, 29 U.S.C. § 412. *Id.* Finally, Plaintiff alleges that the revocation of his membership by Local 103 is "retaliation for his exercise of rights protected under the LMRDA." *Id.* at ¶ 166.

Based on Plaintiff's allegations, Local 1033 is a public employee union; that is, it is a union that represents public employees only. As such, Local 1033 is not subject to provisions of the LMRDA. Under LMRDA, any person whose rights under the Act are infringed may bring suit against a "labor organization" in federal court. However, the Act defines a "labor organization"

to include any organization "dealing with employees concerning grievances, labor disputes, wages, rates of pay, hours, or other terms or conditions of employment . . . ." 29 U.S.C. § 402(i). Employer, in turn, is defined to exclude "the United States or any corporation wholly owned by the Government of the United States or any State or political subdivision thereof." 29 U.S.C. § 402(e).

In that regard, while the LMRDA is the federal law governing rights for most private sector union members, it does not apply to union bodies which represent only state and local government employees. *See Berardi v. Swanson Mem'l Lodge No. 48 of the Fraternal Order of Police*, 920 F.2d 198, 201 (3d Cir. 1990); *New Jersey County & Municipal Council v. American Federation of State, County and Municipal Employees*, 478 F.2d 1156, 160 (3d Cir. 1973)("public employee unions are not covered by the phrase 'subordinate body' in §§ 302 and 304" of the LMRDA).

Here, in Count One, Plaintiff clearly asserts a claim under the LMRDA against Local 1033. However, because Local 1033 is a public-employee union, it falls outside the purview of the LMRDA. Therefore, since the Local Defendants are not governed by the Act, Plaintiff's claim under the LMRDA must be dismissed.[9]

**B. Count Two – Breach of CWA Constitution and Local Bylaws**

Plaintiff alleges that the Local Defendants "lacked jurisdiction and authority under the CWA Constitution, CWA Local 1033's Bylaws" and other policies and practices either to

---

9 In his Opposition, for the first time, Plaintiff alleges that since Local 1033 has employee members that are not public-sector employees — an assertion not made anywhere in the Complaint — Local 1033 is a mixed union subject to the purview of the LRMDA. However, I cannot consider this allegation because it is outside the pleadings. *See Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988). And, more importantly, this new assertion is belied by Plaintiff's own allegation in the Complaint: "CWA Local 1033 represents approximately 7,000 *New Jersey State employees* in 4 different collective negotiation units in Mercer County, New Jersey." Compl., ¶ 6 (emphasis added). Likewise, according to Defendants, Local 1033 only represents members who are exclusively public sector workers.

"terminate" him or revoke his membership, and these actions by the Local Defendants, he argues, are *ultra vires* and therefore, not valid. I note in this claim, Plaintiff does not assert that he was wrongfully terminated in violation of the union's governing documents, but rather, that the Local Defendants do not have the authority to terminate him. Based on the union's governing rules, I do not so find.

Clear in its language, Local 1033 Bylaws Article VII, Section 1.B.1(a) provides that "the Local President shall be responsible for the conduct of all Local business." Section 1.B.2(a) further provides that "the Executive Vice President shall preside during the President's absence and at such time be vested with full duties and powers delegated to the President." Based on Plaintiff's allegations, Defendant Spence-Brown was the acting Executive Vice President at the time when Plaintiff sought to negotiate and resolve his employment issues with Local 1033. Indeed, according to Plaintiff, Spence-Brown together with other individual defendants terminated him in an effort to suppress Plaintiff's rights.[10] However, Plaintiff's cause of action against the Local Defendants challenge their authority to terminate him under the Bylaws. But, there is no question that under the Bylaws, the Local Defendants have the authority to make day-to-day employment decisions within the union. Indeed, even Plaintiff has conceded in his own allegations that he must challenge his termination through the internal appeals process as outlined in the Local 1033's Bylaws and procedures. And, the Local Executive Board approved the Local Defendants' determination to terminate Plaintiff's employment.

Similarly, the Local Defendants' authority to revoke Plaintiff's membership is also clearly defined by the union's governing documents. As I have set forth *supra*, the membership in a

---

[10] According to the Local Defendants, Plaintiff was terminated from employment because he refused to work certain hours and agree to other changes in the terms of his employment.

particular charter depends on whether the member performs work "within the Local's assigned jurisdiction, or if employed on a part-time or full time basis by the Union or the Local." Local 1033 Bylaws, Article V(1)(a). Indeed, when Plaintiff was terminated from his employment, the Local Defendants were well within their authority under the Bylaws to revoke Plaintiff's membership. Therefore, Plaintiff has not sufficiently alleged any facts, nor referenced any provisions of the CWA Constitution or Bylaws, that would entitle him to relief.

**C. Count Three and Count Four – Breach of Employment Contract and Wrongful Discharge**

While this Court has found that the CWA National did not enter into an employment contract with Plaintiff, the Local Defendants stand on a different footing. Indeed, Local 1033 employed Plaintiff, and their employment relationship was purportedly governed by various union documents, such as the Local 1033 Bylaws. And, Plaintiff alleges that the Local Defendants breached "CWA Local By-Laws, rules, policies, and past practices" when they terminated him. Compl., ¶ 170. However, other than making such an assertion, Plaintiff does not allege sufficiently how the Local Defendants breached these rules. While Plaintiff's allegations are deficient in that regard, it appears, however, Plaintiff has detailed a pattern of allegedly retaliatory acts by the Local Defendants against him that may arguably be the bases for his contractual claim. Similarly, Plaintiff's Count Four accuses the Local Defendants of wrongful discharge pursuant to New Jersey common law. Again, while Plaintiff alleges very little to shed light on how his discharge was wrongful in light of the elements necessary to sufficiently allege a claim for wrongful discharge, the Court finds that he may nevertheless be able to state a claim. I will provide Plaintiff another opportunity to amend these two claims, because it is this Court's first review of these *pro se* claims since the filing of the Original Complaint. Therefore, while the Court dismisses Count Three and

Four against the Local Defendants, it is without prejudice to Plaintiff amending these claims against the Local Defendants only.[11]

**D. Count Five – Breach of the CBA**

Count Five purports to be a hybrid Section 301 suit under 29 U.S.C. § 185(a)(b)(c) of the LMRA, alleging that that Local 1033 has violated the CBA and that Local 115 has failed to represent him in enforcing the CBA. Compl., ¶¶ 178-79. As bases for this claim, Plaintiff references to the "Maintenance of Standards" and "Discipline" provisions of the CBA, Article IV and XII, respectively. However, Plaintiff has not alleged sufficiently to demonstrate that he is entitled to the protections of the CBA.

Plaintiff insists that he was a "full-time non-managerial, non-officer employee of CWA Local 1033," thus, his employment was protected by the CBA. However, beyond this factual averment, Plaintiff does not allege any other facts to support his assertion in this regard, particularly since the entirety of allegations in the Complaint suggests otherwise. Indeed, there is no dispute that if Plaintiff were hired as a full-time manger or officer of Local 1033, he would not be a participant of the CBA. Based on Plaintiff's allegations, I do not find that he was covered under the CBA.

Regarding his employment, Plaintiff alleges the following: Plaintiff claims that in March 2009, he retired from his position as New Jersey Area Director for CWA District One, a part of CWA National covering New Jersey, New York and New England states. Compl., ¶ 6. In April

---

11 Plaintiff is advised that when amending these employment-related claims, he must set forth a sufficient basis to hold the individual defendants liable for the acts of the employer, Local 1033. Additionally, in order to properly plead a breach of an employment contract, Plaintiff must also sufficiently allege that his employment with Local 1033 was governed by either a contract or some other governing documents of the union and how the Local Defendants breached that contract. In that regard, Plaintiff must also indicate what, if any, federal statute provides the basis for his breach of employment contract claim.

2009, Plaintiff states that he began his employment with Local 1033." *Id.* Plaintiff further claims that he was hired as a "Staff Representative" — a fact strenuously disputed by the Local Defendants and Local 115. *Id.* But, despite that assertion, Plaintiff goes on to allege various terms of his employment that are inconsistent with what an employee covered under the CBA would have received. For example, Plaintiff admits that was "hired with the understanding that his salary would not exceed $85,000 since any salary beyond that would require payment to his former employer, defendant CWA National Union, of the full amount of his health benefits in retirement." Compl., ¶ 17. Additionally, Plaintiff references a four-day of "unpaid leave of absence" being charged as "compensatory time off." He alleges that "[a]pplying the compensatory time off towards Pursell's unpaid leave time placed Pursell closer to the $85,000 salary threshold which plaintiff had operated under for three and a half years of his employment with CWA Local 1033. Once reaching the $85,000 salary threshold, plaintiff Pursell would either need to stop working for the year or earn compensatory time off to be used in a subsequent year." Compl., ¶ 33. Plaintiff further references a "9-18-12 document" which purportedly is a memorandum to Plaintiff from the Local Defendants accepting Plaintiff's proposed "Terms of Employment" subject to the conditions regarding certain set working hours and reduction of compensatory time. *See* Memo dated September 18, 2012.[12]

Each of these allegations concerning Plaintiff's employment at Local 1033 strongly suggests that Plaintiff was not a full time non-managerial, non-officer employee, because if Plaintiff were a covered employee under the CBA, he would not have had his own employment arrangement with Local 1033. Pursuant to the CBA, an employee is precluded from separately

---

12 This Memo was attached to Plaintiff's Complaint, and therefore, the Court can consider it for the purposes of a dismissal motion.

negotiating terms of the employment with the employer, Local 1033. *See* CBA, Article II ("the Union is the sole and exclusive collective bargaining representative for all full and parti time non-managerial, non-officers employees of CWA Local 1033."). In that connection, Plaintiff's purported employment arrangement with Local 1033 was inconsistent with the CBA because, for example, Plaintiff was not required to work a minimum work week contrary to the CBA, *see* CBA, Article XIV, C.1 ("the minimum workweek shall be thirty-five (35) hours per week"), and the terms of Plaintiff's employment permitted compensatory time with certain limitations, which was also contrary to the terms of the CBA. *See* Article XIV, C.2. Accordingly, based on Plaintiff's own allegations, I cannot find that Plaintiff has alleged sufficiently that he was an employee covered under the CBA,[13] and therefore, this Count is dismissed against the Local Defendants.

**E. Counts Six and Eight - ERISA and Breach of Fiduciary Duty**

In Count Six, Plaintiff alleges that Local 1033 violated the CBA by failing to include all full and part-time non-managerial, non-officer employees under the provision of the 401(k) plan. Compl., ¶ 181; that the Local Defendants violated their responsibility under ERISA and the CBA by failing to operate the 401(k) plan prudently and for the exclusive benefit of participants. *Id.* at ¶ 182; and that he was discriminated and retaliated against by defendants for exercising rights to which he was entitled under the provisions of the employee benefit plan. *Id.* at ¶ 183. Along the

---

13 Notably, the Regional Director for the National Labor Relations Board, after a full investigation, determined that Pursell worked as a "confidential" manager at Local 1033. Indeed, the Director compared the terms of the CBA with Pursell's employment agreement with Local 1033 — just as this Court has done — and determined that Plaintiff's employment was not subject to be the CBA. *See* January 23, 2014 decision of the NLRB General Counsel. I note that Plaintiff references this particular decision from the NLRB in his Complaint, and therefore, I am permitted on these motions to review it. But, I stress that my determination of whether Plaintiff was a covered employee is solely based on my own analysis of the pleadings, not based on the NLRB's decision. I reference this decision simply to illustrate that Plaintiff has failed in other forums to show that he should be entitled to the protections of the CBA.

same lines, in Count Eight, Plaintiff alleges that the Local Defendants breached their fiduciary duty under ERISA.

To the extent Plaintiff seeks to represent other Local 1033 employees for alleged ERISA violations, he does not have standing to do so. But, more importantly, Plaintiff has failed to allege that he was a participant of an employee benefit plan. Indeed, under section 502(a)(1)(B), it is beyond cavil that a civil action may only be brought by "a participant or beneficiary . . . to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). Thus, at a minimum, a plaintiff must allege that he was a participant or beneficiary under an employment benefit plan. *See Bennett v. Prudential Ins. Co.*, 192 Fed. Appx. 153, 157 (3d Cir. 2006). Because Plaintiff has failed to plead the most basic element of his ERISA claims, Counts Six and Eight are dismissed.

**F. Count Seventh – Tortious Interference with Contractual Rights**

As I have stated *supra*, Plaintiff alleges in a conclusory fashion that each of the defendants has "tortiously interfered with the contractual rights described above." Compl., ¶ 185. I will not restate the elements of a tortious interference claim. Suffice it to say, Plaintiff fails to allege any facts to support the elements of a tortious interference claim against the Local Defendants. Accordingly, this claim against these defendants is dismissed.

**G. Count Nine – Violations of the New Jersey Constitution**

Again, without any facts, Plaintiff alleges that Local Defendants violated his free speech, free association, due process rights and collective bargaining under the New Jersey State Constitution. *See* N.J. Const. Art. 1 § 1 (due process); § 6 (liberty of speech); § 19 (collective bargaining). As I have found *supra*, Plaintiff has not alleged any facts in support of these

constitutional claims. Notwithstanding Plaintiff's failure to allege how the constitution was violated, the constitutional claims must be dismissed for another reason: the Local Defendants are not state actors. Indeed, under the New Jersey Constitution, as under the federal constitution, a plaintiff may only assert [a] . . . violation [pursuant to the Constitution] against a state actor." *See Robinson v. Cahill*, 62 N.J. 473, 491-92 (1973); *see also State v. Schmid*, 84 N.J. 535, 559-60 (1980); *McBryde v. Cont'l Airlines, Inc.*, 2009 U.S. Dist. LEXIS 93083, at *3 (D.N.J. Oct. 6, 2009); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 205-08 (3d Cir. 2000) (holding that due process claims against a private employer fail due to absence of state action). Accordingly, Count Nine is dismissed against the Local Defendants.

**IV. Local 115 – Motion for Judgment on the Pleadings**

It appears Plaintiff only asserts the following causes of action against Local 115: Count Five, hybrid § 301 action; Count Six, violation of ERISA; Count Seven, tortious interference of contractual rights; and Count Nine, violations of the New Jersey Constitution. These claims are all dismissed against Local 115. I need not belabor my reasoning here because I have already set forth in detail, *supra*, why these claims have not been sufficiently alleged by Plaintiff. In short, in Count Five, Plaintiff has failed to allege that he was an employee covered under the CBA. In Count Six, Plaintiff has not alleged that he was a participant of any employee benefit plan established under the CBA or otherwise. In Count Seven, Plaintiff does not allege any facts to satisfy the elements of the claim for tortious interference. And, finally, in Count Nine, Plaintiff does not allege any state action by state actors, nor does he allege sufficiently any facts to support his constitutional claims. Accordingly, all claims against Local 115 are dismissed.

**CONCLUSION**

For the reasons set forth above, the Court grants CWA National's motion to dismiss in its entirety and grants Local 115's motion for judgment on the pleadings. As to the Local Defendants' motion to dismiss, the Court dismisses Counts Three and Four, without prejudice, and the remaining Counts are dismissed with prejudice. Consistent with this Opinion, Plaintiff shall have leave to amend his Complaint as to Counts Three and Four against the Local Defendants only. Plaintiff is ***not*** permitted to amend any other claims against the Local Defendants, Local 115 or CWA National. Additionally, Plaintiff is directed to delete any allegations currently included in the Complaint related to former plaintiff Coia. Finally, the Clerk of the Court is directed to administratively terminate this case pending Plaintiff's amendment. If Plaintiff intends to proceed, he is directed to file his third amended complaint by no later than January 15, 2016.

Dated: December 17, 2015

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge